461 So.2d 802 (1984)
CONTINENTAL ASSURANCE COMPANY, a Corporation
v.
Freddie E. KOUNTZ.
82-793.
Supreme Court of Alabama.
December 21, 1984.
*803 Alton R. Brown, Jr. and Cynthia A. Cargile of Brown, Hudgens, Richardson, Whitfield & Gillion, Mobile, for appellant.
Leon G. Duke and Mary Beth Mantiply of Sintz, Pike, Campbell & Duke, Mobile, for appellee.
ADAMS, Justice.
This appeal arises from a suit filed by Mrs. Freddie Kountz against Continental Assurance Company in which Kountz sought damages for Continental's failure to pay an insurance claim. Continental appeals from the entry of judgment on a jury verdict of $23,000.00 in favor of the plaintiff.
The case arose from the following facts:
Plaintiff Freddie Kountz was insured by defendant Continental as a beneficiary on her husband Dominick Kountz's group health and accident policy, which he obtained through his employer, Grady Buick, Inc., of Mobile. The written insurance policy delineates limitations on major medical expense benefits, noting that the policy does not cover expenses incurred "[i]n connection with dental care and treatment except that necessitated by accidental bodily injury, occurring while insured, to sound natural teeth."
Mrs. Kountz received a blow to the mouth during a robbery attempt against her in January of 1980. As a result of this injury, one of Kountz's front teeth was knocked out, several of her front teeth were loosened, her mouth bled, and her face swelled. Kountz reported this attack to the police and although her dentist, Dr. Brown, was not seeing patients that day, she talked with him by telephone and thereby obtained medicine for her pain.
According to Kountz, she had been able to chew and eat normally prior to her injury and had no real problems with her teeth before this time. Subsequent to the attack, however, Kountz was forced to eat soft foods and use only her back teeth for chewing, because her teeth were loose.
*804 After examinations by Dr. Brown and later by Dr. Woodall, Kountz was eventually examined by Dr. Charles Black, an oral surgeon, on March 28, 1980. Dr. Black found that Kountz suffered from chronic periodontal disease, a condition causing deterioration of the gums. Dr. Black found the disease to be fairly uniform throughout the mouth, but that the back teeth and molars were nevertheless fairly sound while the front teeth were very mobile and non-salvageable. Dr. Black recommended an extraction of Kountz's eight front teeth and was of the opinion that the surgery was necessitated at that particular time because of the blow to Kountz's mouth.
Before undergoing the surgery, Kountz wanted to know whether her insurance coverage through Grady Buick's Continental policy would pay for this operation. Since Kountz is blind, she had her mother telephone Continental, but Kountz herself talked to the representative. The number called was that of a Mobile insurance agency listed in a Yellow Pages advertisement as being a representative of Continental.
Kountz talked first with a female insurance representative and several days later with a male agent at the same number. Kountz could not name the persons with whom she talked. During each conversation however, Kountz communicated that she was inquiring about coverage under Grady Buick's policy with Continental. She explained the circumstance of her injury and was assured by each of the unidentified representatives that Continental would pay for the oral surgery necessitated by such an attack.
On April 10, 1980, relying on the representations made by the agents, Kountz underwent the extractions recommended by Dr. Black. After receiving her bill from the hospital, Kountz submitted an insurance claim to Continental for $2,600.00. Continental denied payment of the claim.
Freddie Kountz and Dominick Kountz filed suit against Continental on June 15, 1981, alleging breach of contract, false representation, bad faith, and outrage on behalf of Freddie Kountz and breach of contract, outrage, and bad faith on behalf of Dominick Kountz. The case was tried before a jury on February 22, 1983. At the close of the plaintiff's case, Continental moved for a directed verdict on all counts. This motion was granted as to the three counts alleged by plaintiff Dominick Kountz and denied as to the other counts.
The defendant failed to put on any evidence and renewed its motion for a directed verdict. This motion was denied on all counts except for the claim of outrage. This count was voluntarily withdrawn by plaintiff Freddie Kountz and the defendant's motion for a directed verdict was then granted on that count. Plaintiff Freddie Kountz made no motion for a directed verdict.
After being charged on breach of contract, false representation, and bad faith, the jury returned a verdict for plaintiff Freddie Kountz and against Continental in the amount of $23,000.00. The trial court denied Continental's motion for a judgment notwithstanding the verdict, or alternatively for a remittitur or new trial. Continental appeals.
Continental asserts four reasons why we should reverse this case and render judgment in its behalf: 1) The trial court erred in submitting the bad faith claim to the jury; 2) the trial court erred in submitting the false representation claim to the jury; 3) the evidence does not support an award of punitive damages; and 4) the trial court erred in excluding the use of relevant evidence at trial. We find no merit in these assertions of error and therefore affirm the judgment entered on the jury verdict rendered below.

I.
Continental claims that its motion for a directed verdict on the bad faith count was erroneously denied and that therefore the claim was incorrectly sent to the jury. Defendant argues first that Kountz was not entitled to a directed verdict on the breach of contract claim, thereby negating the bad faith action, and second, that the evidence *805 failed to support the bad faith claim anyway.
The tort of bad faith refusal to pay an insurance claim was recognized by this court in Chavers v. National Security Fire & Casualty Co., 405 So.2d 1 (Ala. 1981). We discussed the standard of proof in a bad faith action in this way:
[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either "(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal."
Chavers, 405 So.2d 7. Therefore, a claim may be proven in one of two ways. The plaintiff can show that the insurer knew there was no lawful basis to refuse payment of the claim, or, alternatively, that the insurer intentionally failed to discover whether the refusal to pay had a lawful basis.
In Gulf Atlantic Life Insurance Co. v. Barnes, 405 So.2d 916 (Ala.1981), this alternative method of proof was further examined:
The second tier of the test is an elaboration on the first. The trier of fact, by finding, on the part of the insurer, an "intentional failure to determine whether or not there was any lawful basis for refusal," may use that fact as an element of proof that no lawful basis for refusal ever existed. The relevant question before the trier of fact would be whether the results of the investigation were subjected to a cognitive evaluation and review. Implicit in that test is the conclusion that the knowledge or reckless disregard of the lack of a legitimate or reasonable basis may be inferred and imputed to an insurance company when there is a reckless indifference to facts or to proof submitted by the insured.
Barnes, 405 So.2d at 924. Barnes indicates that the plaintiff in a bad faith suit must prove that no lawful basis for refusing payment existed, but that proof of an intentional failure to determine whether a lawful basis existed will militate toward the finding that no such basis in fact existed.
Subsequent to Barnes, we decided National Security Fire & Casualty Company v. Bowen, 417 So.2d 179 (Ala.1982), which reiterated the standard of proof required in a bad faith action. That case held that the plaintiff must prove the following:
(a) an insurance contract between the parties and a breach thereof by the defendant;
(b) an intentional refusal to pay the insured's claim;
(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
Bowen, 417 So.2d at 183. The three latter elements provide a concise reflection of previously discussed case law. Parts a and b simply require a showing that there was in fact an insurance contract and that the contract was breached by the insurer's intentional refusal to pay the claim.
The importance of proving the existence of the contract and a breach thereof was reinforced in National Savings Life Insurance Co. v. Dutton, 419 So.2d 1357 (Ala.1982). The contract claim's direct relationship to the bad faith claim was described as follows:
In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the *806 denial thereof, the tort claim must fail and should not be submitted to the jury.
Dutton, 419 So.2d at 1362. Thus, "in the normal case," before the bad faith claim can be submitted to the jury, the existence of a contract and the breach of that contract must be proven to the extent that the plaintiff would be entitled to a directed verdict on the breach of contract claim. Dutton's use of the language "in the normal case" and "ordinarily" in the above excerpt, however, indicates that cases will arise in which the plaintiff will not have to meet the directed verdict test in order to recover on the bad faith claim.
In the case now in issue, Continental claims that Kountz was not entitled to a directed verdict on her breach of contract claim, and, thus, that the bad faith claim should not have gone to the jury. This argument fails for two reasons. First, the evidence shows that Kountz was in fact entitled to a directed verdict on the contract claim, thus meeting the Dutton test. Second, even if Continental could defeat Kountz's directed verdict on the contract claim, this case is not the "normal" or "ordinary" case described in Dutton; in an extraordinary case like this the directed verdict standard is inapplicable. Aetna Life & Cas. Insurance Company v. Lavoie, [MS. 82-426, December 7, 1984] (Ala.1984).
A directed verdict is proper on a claim where the facts are such that all reasonable men must draw the same conclusion from them. Turner v. Peoples Bank, 378 So.2d 706 (Ala.1979). A plaintiff is entitled to a directed verdict where there are no controverted issues of fact upon which reasonable men could differ. Loeb & Co. v. Martin, 295 Ala. 262, 327 So.2d 711 (1976).
The parties in this case stipulated that there was in fact a contract. The disputed issue was whether there was a breach of that contract by Continental's failure to pay, that is, whether Kountz's injury was covered by the insurance policy. This question turned on whether Kountz's injury occurred to "sound" teeth as required by the policy.
The evidence presented on this matter at trial consisted of Kountz's own testimony and that of her oral surgeon, Dr. Black. Although Dr. Black testified that Kountz suffered from chronic periodontal disease uniformly affecting the entire mouth, the following exchange took place at trial:
Q. Did you find all of her teeth to be loose or were some of them intact?
A. The majority of posteriorthe back teeth and molars were fairly sound and the anterior teeth were very mobile and non-salvageable. [Emphasis added.]
The anterior or front teeth were the teeth affected by the blow Kountz received to the mouth.
Additionally, Dr. Black testified that Mrs. Kountz's injury, and not the disease, "was the reason for the removal of the teeth at this particular time." Similarly, Mrs. Kountz testified as follows:
Q. After you had gotten hit in the mouth, did you have any trouble eating?
A. Yes.
Q. What kind.
A. Well, my teeth were loose. I had to chew in the backI had to put my foodI had to eat soft stuff, but if I had anything I had to really chew I had to chew in the back of my mouth.
Q. Were you able to chew before you were hit in the mouth?
A. Yes.
Q. Did you have any problems with your teeth before you were hit in the mouth?
A. No. Not really, you know.
Q. Were you able to eat normally?
A. Yes.
Plaintiff Kountz's evidence indicates that although her mouth was infected with some degree of periodontal disease, she had no chewing problems with her teeth prior to the assault, yet had great problems *807 in this matter after the injury. Kountz's back teeth were "fairly sound" after the assault, while the front teeth, which were subject to the blow to the mouth, were "unsalvageable." Additionally, the reason Kountz's teeth needed to be removed when they were in fact removed was the damage inflicted by the blow to the mouth.
This was the evidence adduced at trial on this issue. Continental put on no evidence to controvert this testimony. After reviewing the record, it appears that reasonable men would not differ on the conclusion drawn from the evidence and that Kountz would have been entitled to a directed verdict on the breach of contract claim. Although Kountz did not actually move for a directed verdict, this is not a requirement. It is noted, moreover, that the lower court's order of May 4, 1983, stated the following findings of fact:
1. The evidence adduced at trial was sufficient to support a directed verdict in favor of the plaintiff on the plaintiff's contract claim for her eight front teeth.
2. The evidence affirmatively showed that the plaintiff was entitled to a directed verdict in her favor on her contract claim for her eight front teeth.
3. Had the plaintiff's attorney moved for directed verdict in the plaintiff's favor, it would have been granted as to the eight front teeth.
Therefore, after reviewing the record, we are in agreement with the trial judge, who actually observed the testimony, that Kountz's evidence proved a breach of the insurance contract with sufficiency to warrant a directed verdict.
Furthermore, as stated above, even if Kountz was not entitled to a directed verdict on her contract claim, this is one of those cases in which the directed verdict test is not applicable. In the recently decided case of Aetna Life & Cas. Insurance Company v. Lavoie, [MS. 82-426, December 7, 1984] (Ala.1984), we affirmed a verdict for the plaintiff for Aetna's bad faith denial of a hospitalization claim. Aetna's blatant and intentional failure to determine the existence of a valid reason for denial rendered that case an extraordinary one, wherein the defendant's ability to put on a scintilla of evidence to defeat a directed verdict on the contract and thus avoid bad faith liability was deemed manifestly unjust. Thus, in Lavoie, it was proper for the bad faith count to go to the jury even though Aetna's evidence at trial would have defeated the plaintiff's directed verdict on the contract claim. Under Lavoie then, Kountz's bad faith claim properly went to the jury, even if Kountz was not entitled to a directed verdict on the contract.
Continental argues that notwithstanding the issue of the directed verdict on the contract claim, Kountz had to provide a prima facie showing of the tort of bad faith in order for the case to go to the jury. Continental argues that Kountz failed to prove a prima facie case and that this claim should not have been submitted to the jury. Continental asserts that the trial court should have instead granted its motion for a directed verdict on the bad faith claim. This argument fails.
A directed verdict is proper only where there is a complete absence of proof on an issue material to the claim or where there are no disputed questions of fact on which reasonable people could differ. Ritch v. Waldrop, 428 So.2d 1 (Ala.1982). See also Turner v. Peoples Bank and Loeb & Co. v. Martin, supra.
Having discussed the standard of proof required in a bad faith case, we find that Kountz presented sufficient evidence to warrant a jury decision on Continental's liability. Kountz needed to show that Continental had no legitimate or arguable reason to deny payment and that Continental knew that it had no such reason. National Security Fire & Casualty Co. v. Bowen, supra. One method of proving that Continental had no legitimate reason to deny payment would be a showing that the defendant intentionally failed to determine whether or not there was any lawful basis for denying payment. Gulf Atlantic Life Insurance Co. v. Barnes, supra.
*808 A review of the record indicates that there was sufficient evidence of Continental's intentional failure to determine whether there was a lawful basis for denying Kountz's claim to support the inference of bad faith failure to pay.
Continental denied Kountz's claim three times. The record is unclear as to what information Continental had in its possession each time it made a denial, that is, the information upon which the defendant based each rejection. The following evidence was adduced at trial however: 1) The original claim form submitted by Kountz stated that she had been mugged during an attempted robbery; 2) Continental denied the claim and requested a police report on the assault; 3) Kountz submitted a second claim with a copy of the police report, which describes the assault; 4) Continental informed Grady Buick that the claim was being denied because there was no evidence of an accidental injury, even though Continental had the police report in its possession; 5) Continental denied the claim because a hospital record listed Kountz's chief complaint as "dental caries, and gum disorder"; 6) Continental requested from Kountz an explanation by Dr. Black regarding the cause of the teeth extraction; 7) Dr. Black had an employee fill out the required form stating that Kountz had to undergo oral surgery due to a mugging and authorized the employee to sign the statement for Dr. Black; 8) Dr. Black's statement invited Continental to contact him if more information was needed; 9) Continental suspected that someone had forged Dr. Black's signature but did not contact the doctor to verify this suspicion, or to inquire as to further information regarding the cause of Kountz's dental problems; 10) Continental knew that Dr. Stewart had treated Kountz but did not contact him regarding the cause of Kountz's dental problems; 11) Continental stated that the policy holder, Grady Buick, Inc., preferred Continental to obtain information through Grady Buick, and not through the insured directly; however, Grady Buick Inc., had, in fact, written Continental stating that the insurance company should contact Dr. Black directly if further information was needed.
The evidence indicates that, notwithstanding the references to Kountz's mugging in their file, Continental denied the claim because the hospital record listed "dental caries, and gum disorder" as the plaintiff's ailment. The examination of Continental's Atlanta Claims Branch manager James Ritchie went in part as follows:
Q. And this claim has never been reviewed by anyone in your company with any kind of dental expertise; is that correct?
A. Based on what we have, there would be no reason.
Q. Okay. But for all you know when you get these letters saying something about gum problems or infections, that could be caused from being bashed in the mouth, couldn't it, for all you know, all your dental expertise?
A. As you word it, for all I know it could happen for any reason.
Mr. Ritchie also testified about Continental's methods of obtaining information upon which to deny or allow a claim. The questioning sought an explanation of Continental's failure to request information directly from Dr. Black before denying the claim:
Q. Oh, I see. You will request things that you think will help get you out of it directly, but if it's something that might substantiate it, you go through the group employer; right?
A. To a degree that's what we are told by the employers.
Based on our review of the evidence in the record, we find that there was a prima facie showing of bad faith failure to pay a valid claim sufficient to deny Continental's motion for a directed verdict and to send this case to the jury.

II.
We now address Continental's arguments that 1) the trial court erred in submitting the misrepresentation claim to the *809 jury, 2) the evidence in this case does not support an award of punitive damages, and 3) the trial court erred in excluding certain evidence at trial.
Continental states that the trial court committed reversible error when it denied Continental's motion for a directed verdict on Kountz's misrepresentation cause of action. Having above discussed the applicable standard for denying a motion for a directed verdict, we find that there was sufficient evidence presented at trial to warrant allowing the misrepresentation cause of action to go to the jury.
Kountz was required to put on evidence showing that 1) Continental's agents made a false representation; 2) the representation concerned a material fact; 3) Kountz relied on the representation; and 4) Kountz sustained injury by relying on the representation. Fountain-Lowery Enterprises v. Williams, 424 So.2d 581 (Ala.1982).
Evidence was adduced at trial from which the jury could conclude that Kountz twice discussed her insurance coverage with agents of Continental, the agents misrepresented that Continental would pay for Kountz's dental work, Kountz relied on the representations made to her by undergoing the oral surgery, and she suffered damage in that she remained liable for the medical bills incurred. The existence of this evidence precluded a directed verdict on this issue in favor of the defendant, and the trial court properly denied Continental's motion.
Continental asserts further that the evidence in this case does not support an award of punitive damages. In Gulf Atlantic Life Insurance Co. v. Barnes, 405 So.2d 916 (Ala.1981), the recovery of punitive damages in a bad faith case was explained as follows:
Alabama allows recovery of punitive damages when the plaintiff shows that he suffered, at least, nominal damage and that the acts complained of were committed with malice, willfulness, or wanton and reckless disregard of the rights of others.... Thus, for punitive damages to be awarded in Alabama, a defendant must not only intentionally have breached his duty of good faith, but in addition must have committed acts of the nature described above.
405 So.2d at 925. We find that there was evidence presented in this case from which the jury could have concluded that Continental acted with malice, willfulness, or wanton and reckless disregard of Kountz's rights. Therefore, the jury verdict is not improper because it included punitive damages.
Continental's final ground in support of reversal of this case is the assertion that the trial court erred in excluding the use of certain deposition testimony at trial. Kountz submitted prior to trial a written motion in limine requesting that Continental be precluded from making reference to any of the physicians who treated the plaintiff. This motion is marked "denied" as it appears in the record. Continental claims that it was prejudiced by being prohibited from introducing the depositions of two doctors at trial, but nothing in the record indicates that such a prohibition existed. Additionally, nowhere does it appear that Continental even attempted to introduce the depositions into evidence during the trial. Because there is no ruling of the trial court adverse to Continental appearing in the record with regard to its objections, there is nothing presented to this court for review by those assignments of error. McCulloch v. Roberts, 290 Ala. 303, 276 So.2d 425 (1973). Therefore, Continental's final argument for reversal fails.
For all of the above reasons, the judgment on the jury verdict rendered below is affirmed.
AFFIRMED.
FAULKNER, ALMON and EMBRY, JJ., concur.
TORBERT, C.J., and SHORES, J., concur in the result, with opinion by TORBERT, C.J.
JONES, J., concurs specially, with opinion.
*810 BEATTY, J., concurs in the result, without opinion.
MADDOX, J., dissents.
TORBERT, Chief Justice (concurring in the result).
I concur in the result. I would add that while I disagree with Justice Maddox's conclusion in his dissent that the case of National Security Fire and Casualty Co. v. Vintson, 454 So.2d 942 (Ala.1984), precludes a finding of bad faith in this case, I agree with that part of his dissent which discusses my view expressed in Lavoie that attractive alternatives to the tort of bad faith should be pursued.
SHORES, J., concurs.
JONES, Justice (concurring specially):
I agree with the opinion, but I see no need to invoke the exception to the directed verdict test recognized in Lavoie. Clearly, these facts entitled Ms. Kountz to a directed verdict on the contract claim. She had dental work performed on her front teeth immediately following severe injury inflicted to those teeth in a brutal physical assault to her face. The last of three denials of payment by the insurer was based on the unsubstantiated suspicion that the claim form contained a forged signature of the treating dentist. It is by far the clearest case of willful failure to pay an insurance claim without any legal basis that has yet come before our Court. For this reason I would not reach the exception to the directed verdict test.
I think it is appropriate, here, to caution the reader that neither Lavoie nor the instant case should be read as weakening the application of the directed verdict test in a bad faith claim context. It is a valid and useful threshold gauge, testing whether the bad faith claimant has met the first prong of his prima facie burdenthat is, whether he was entitled, as a matter of law, to recover on the contract claim. If not, there "endeth" the tort claim of bad faith. If so, the claimant must meet the second prima facie prong: that the insurer acted in bad faith in failing to process or to pay the claim.
The exception to the directed verdict test, contemplated in Dutton and recognized in Lavoie, is a very narrow one. It is not overly simplistic to state the Lavoie exception thusly: The law will not permit the insurer to create a fact issue by testimony from its own employees, the veracity of which is subject to rejection by the trier of facts, and thus defeat a claimant's motion for a directed verdict on the contract claim and thereby preclude a bad faith claim. If the factfinder rejects the factual basis for denial, and that basis is supplied solely by the testimony of the insurer's agents or employees, it would be ludicrous to allow such wrongful conduct to defeat, rather than enhance, a bad faith claim. To hold otherwise would be to reward one for his own wrongdoing. This exception strengthens, rather than weakens, the general rule.
One further comment: I think it is more confusing than helpful to discuss the requisite elements of punitive damages in a bad faith context in terms of either "malice" on the one hand or "wanton and reckless" on the other. The very definition of bad faith failure to pay a valid insurance claim embraces the concept of an intentional injury: the highest degree of culpability known to the law of torts. If the evidence does not support a finding of intentional refusal to pay without a legally or factually debatable reason, the tort claim fails. If the evidence does support a tort claim, it necessarily is a proper case for punitive damages. Language that implies a two-tier test is misleading and improper.
MADDOX, Justice (dissenting).
This case is another in a series of "bad faith" cases which this Court has considered in the past few years, and points out once again that the insured was allowed to go to the jury on the bad faith claim, even though there were conflicts in the evidence on the breach of contract claim, the issue of liability was still being litigated, and the liability of the insurer to pay was not determined until the jury returned *811 a verdict on the contract claim. Here, the majority compounds its error by holding that the insured was entitled to a directed verdict on the contract claim, even though no request was made that the trial court grant a directed verdict on the contract claim. Even more disturbing is the fact that the majority, in one part of the opinion, actually states that there was a dispute on the contract claim. The opinion, in part, reads:
"The parties in this case stipulated that there was in fact a contract. The disputed issue was whether there was a breach of that contract by Continental's failure to pay, that is, whether Kountz's injury was covered by the insurance policy. This question turned on whether Kountz's injury occurred to `sound' teeth as required by the policy." (Emphasis added.)
Nevertheless, the majority not only finds that a dispute existed on the contract claim, but then disregards that finding and exempts plaintiff from making a motion for a directed verdict, and further finds that this is not a "normal case," thereby allowing plaintiff to recover under the principles announced in Aetna Life & Cas. Ins. Co. v. Lavoie, [Ms. 82-426, December 7, 1984] (Ala.1984). This use of the appellation "normal case," although it is lifted from one of this Court's cases, sets up a difficult test to apply. It is much like a court having to say that while "obscenity" cannot be defined, "I know it when I see it." To apply such principles to contract law, where the rule of "expectancy of the parties" is the polestar, seems unnecessary and very difficult to apply because of its subjectivity. These "bad faith" cases, unfortunately, in my opinion, fail to give to the bench and bar some settled principles to guide them in determining when, and under what circumstances, the tort can be established. That is the reason I consistently dissented, until I joined every member of the Court in National Security Fire and Casualty Co. v. Vintson, 454 So.2d 942 (Ala.1984), in which this Court concluded that a plaintiff had a very heavy burden in establishing a bad faith failure to pay, and that that burden was to show that the insurer, to quote from Vintson, "had no legal or factual defense to the insurance claim." The Vintson test at least provided a more objective standard which trial judges, lawyers, and appellate judges could apply. Here, the Court follows Lavoie, which is diametrically opposed to Vintson.
There is another reason why the "bad faith" claim should not have been sent to the jury in this case. Plaintiff, by failing to request a directed verdict on the contract claim, necessarily left to the jury the factual determination of whether there was a contractual duty on the insurer to pay the claim. Even assuming we could waive the request for a directed verdict, I must respectfully disagree with the majority that the plaintiff was entitled to a directed verdict on the contract claim, as I have already pointed out. In fact, the majority opinion concedes, in one portion of the opinion, that there was a "disputed issue ... whether Kountz's injury was covered by the insurance policy."
By dissenting in this case, and in others presented to this Court, I may appear to believe a plaintiff in a case such as the present one should be limited to his usual contract damages, but I have no such views, and have never entertained them. The Chief Justice, in his dissent in Lavoie, using a principle which I have long held to be the law, has suggested what I believe would be a sound rule of law to establish in these insurance contract cases. He suggested that this Court should adopt a rule that would restrict the cause of action, in situations such as exist here, to one sounding in contract, but expand the contractual damages rules for non-commercial insurance contracts. To me, that would be a just and fair rule which could be easily applied, and would be a rule this Court could unanimously adopt. Of course, the Legislature is the body normally relied upon to correct any ills which might exist in the insurance industry regarding payment *812 of insurance claims,[1] but in the absence of legislation, I would favor a rule of law which would allow the recovery of consequential damages, including reasonable attorneys' fees, when a party is forced to go to court to establish his claim under an insurance policy.
The failure of insurers to promptly pay what policyholders consider just claims is of great public concern. That concern is evidenced by the proliferation of cases in which policyholders seek not only redress under the contract, but also punitive damages under a "bad faith" theory, and juries are responding with verdicts of such magnitude that this Court has seen fit to require remittiturs.[2]
As I have already stated, in our scheme of government, policy questions like this, especially since they involve the heavily regulated insurance industry, should properly be addressed by the Legislature, but the Legislature has not acted.[3] *813 Another concern of mine is the fact that because of this Court's adoption of the "bad faith" tort, there very well may be instances when insurance companies pay claims which factually should be denied; nevertheless, the company opts to pay rather than face the possibility of a lawsuit. If those instances do occur, then premiums for all other policyholders necessarily rise to offset these added costs. On the other hand, there no doubt are instances when companies require policyholders to resort to a court suit, even though the factual basis for denial of a claim is questionable. The fairest rule, it would appear to me, in view of these two policy considerations, would be one which would allow any party to a non-commercial insurance contract, who is forced to go to court in order to recover his contract claim to recover his consequential damages as well, including reasonable attorneys' fees.
In summary, I believe the judicially created tort of "bad faith" has serious policy ramifications which could and should be addressed by the legislative body of our government, I, nevertheless, feel that, in some cases, damages in addition to those provided for by the contract are necessary to make the policyholder whole.
Consequently, I would apply the rule which I believe would be just in this case and would reverse the judgment awarding punitive damages, but would remand the cause to the circuit court for a determination of the consequential damages which the plaintiff suffered as a result of the breach.
NOTES
[1] The Legislature responded to a policy concern when municipal immunity was stricken, Code 1975, §§ 11-93-1 through 11-93-3, and also when public policy indicated the necessity for a law to address the proliferation of medical malpractice claims, Code 1975, § 27-26-2.
[2] In these cases, there has been no uniformity in the amount of damages awarded, but this Court has not been uniform either in requiring remittiturs. Cf. Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916 (Ala.1981), and Lavoie, supra.
[3] For at least one state, commentators have proposed a statute. K. Harvey and T. Wiseman, First Party Bad Faith: Common Law Remedies and a Proposed Legislative Solution, 72 Ky.L.J. 141 (1983-84):

"AN ACT relating to first party insurance claims. Be it enacted by the General Assembly of the Commonwealth of Kentucky:
SECTION 1. A NEW SECTION OF SUBTITLEOF KRS CHAPTER 304 IS CREATED TO READ AS FOLLOWS:
"(1) The desire to provide a fair and equitable means of resolving disputes that arise between insurers and insureds requires that the statutory mechanism herein be adopted to effect the following purposes:
"(a) To encourage insurers to conduct reasonable investigations of claims by its insureds;
"(b) To promote prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
"(c) To deter insurers from unreasonably delaying or denying benefits due their insureds under contracts of insurance;
"(d) To provide the insured the benefit of his bargain when he is compelled to bring a cause of action against his insurer to enforce the terms of a valid insurance contract;
"(e) To provide a reasonable remedy for common law causes of action by first party claimants; and
"(f) To allow insurers to assert valid defenses and to defend fairly debatable claims without exposure to liability grossly disproportionate to the claims and amounts involved.
"(2) Under no circumstances is it the intent nor shall this subtitle be construed to provide the basis for an independent duty, which the breach thereof would give rise to an independent tort.
"(3) As used in this subtitle the following definitions shall apply:
"(a) `First party claimant' means an individual, corporation, association, partnership or other legal entity asserting a right to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract. A `first party claimant' includes, but is not limited to, the intended beneficiary of an uninsured motorist insurance policy.
"(b) An `insurance policy or contract' means a policy or contract entered into by an insurer as defined in this Chapter or a substitute therefor entered into by a self-insured entity or employer.
"(c) `Bad faith' means there must be an absence of a reasonable basis of denial of the insurance policy or contract benefits. The insurer's refusal to pay a fairly debatable claim does not constitute bad faith for purposes of this subtitle.
"(4) If a first party claimant is adjudged to have been entitled to recovery according to the terms of the insurance contract under which a right of recovery is claimed in an amount in excess of that amount offered by the issuer of the insurance policy or contract, the court shall award the first party claimant a reasonable attorney fee.
"(5) Should the issuer of the insurance policy or contract make a written offer of settlement to the first party claimant in an amount that is equal to or more than that which the first party claimant is ultimately adjudged to be entitled to recover, the first party claimant shall not recover attorneys fees incurred from the time the offer of settlement was communicated to the first party claimant. After litigation has commenced, the settlement offer shall be in the form contemplated and governed by the terms of Kentucky Rules of Civil Procedure.
"(6) Upon being adjudged liable to the first party claimant, the issuer of the insurance policy or contract shall pay an additional penalty not to exceed twenty percent (20%) of the recovery to the extent it exceeds any amount offered in accordance with sub-section five (5) hereof if the court or jury finds that such defendant's refusal to pay the first party claimant according to the terms of the insurance policy or contract was in bad faith. But in no case shall such penalty be less than five hundred dollars ($500).
"(7) The penalty imposed under this subtitle shall be the exclusive remedy for the refusal of the issuer of the insurance policy or contract to pay a first party claimant in the absence of good faith and such failure shall not give rise to an independent action in tort."