621 So.2d 977 (1993)
INDEPENDENT FIRE INSURANCE COMPANY
v.
Randall D. LUNSFORD and Betty J. Lunsford.
Randall D. LUNSFORD and Betty J. Lunsford
v.
INDEPENDENT FIRE INSURANCE COMPANY.
1911677, 1911807.
Supreme Court of Alabama.
May 28, 1993.
Albert L. Jordan, B. Glenn Murdock and R. Dale Wallace, Jr. of Wallace, Jordan, *978 Ratliff, Byers & Brandt, Birmingham, for Independent Fire Ins. Co.
James H. Starnes of Starnes & Atchison, Birmingham, and Jerry L. Thornton, Hayneville, for Randall D. and Betty J. Lunsford.
KENNEDY, Justice.
The defendant, Independent Fire Insurance Co. ("Independent"), appeals from a judgment based on a jury verdict in favor of the plaintiffs, Randall and Betty Lunsford, on a two-count complaint alleging breach of contract and bad faith (case 1911677). We affirm in part; reverse in part; and render a judgment for the defendant on the bad faith claim. The Lunsfords cross appealed, complaining of the court's denial of a directed verdict on their contract claim (case 1911807). Because they now concede that any error in denying the directed verdict would be "harmless error," we dismiss the cross appeal.
The record indicates the following facts pertinent to Independent's appeal.
In 1986, the Lunsfords purchased from Independent an insurance policy to cover a mobile home they owned. The mobile home was not a primary residence, but was used occasionally by relatives of theirs. The policy provided standard coverage for loss, subject to certain exclusions.
In February 1990, a windstorm damaged an awning attached to the mobile home. The Lunsfords notified the Elmer Tallant Agency, which in turn reported the damage to Independent. Independent retained Capitol Adjustment Company of Montgomery to handle the loss. An adjuster for Capitol Adjustment inspected the mobile home and sent a letter describing the loss, along with photographs, to Independent. Independent denied the claim, based on a windstorm exclusion endorsement on the Lunsfords' policy. That endorsement excluded coverage as to windstorm or hail damage to "canopies, awnings constructed of cloth, vinyl or canvas and other awnings not permanently attached to the mobile home."
The Lunsfords sued Independent and Capitol for damages, alleging breach of their insurance contract, arising out of Independent's denial of their claim, and alleging a bad faith refusal to pay. Capitol Adjustment was dismissed voluntarily at the close of the plaintiffs' evidence. The jury returned a verdict for the Lunsfords in the amount of $25,000 in compensatory damages on the breach of contract count and $100,000 in punitive damages on the bad faith count. The court entered a judgment on that verdict.
The issues presented are whether the evidence supported the finding that Independent's refusal to honor the claim was a bad faith refusal; whether the evidence supported the finding of a breach of contract; and if so, whether the evidence supported the jury's awards of damages.
According to National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179, 183 (Ala.1982), the plaintiff in a bad faith refusal case has the burden of proving:
"(a) An insurance contract between the parties and a breach thereof by the defendant;
"(b) An intentional refusal to pay the insured's claim;
"(c) The absence of any reasonably legitimate or arguable reason for that refusal;
"(d) The insurer's actual knowledge of the absence of any legitimate or arguable reason;
"(e) If the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim."
The insurance policy issued to the Lunsfords was subject to an exclusion for windstorm damage to awnings. The exclusionary language in Form IMH-511 reads: "Windstorm or hail. To any of the following property: ... (g) canopies, awnings constructed of cloth, vinyl or canvas and other awnings not permanently attached to the mobile home."
*979 The awning attached to the Lunsfords' mobile home was made of cloth or vinyl and was supported by an aluminum frame. In February 1990, a windstorm tore the awning and bent the frame. After inspecting the awning for 20 to 25 minutes, the adjuster from Capitol determined that "wind destroyed cloth awning and its frame."
The burden of proof was on the Lunsfords to show, by substantial evidence, "[t]he absence of any reasonably legitimate or arguable reason for refusal" of their claim. Bowen. Thus, in the absence of substantial evidence that an insurer lacked a "reasonably legitimate or arguable" reason to deny coverage, a trial court errs by submitting the issue of bad faith to the trier of the facts. § 12-21-12(a), Ala.Code 1975.
Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989).
We conclude that the Lunsfords did not meet their burden of showing substantial evidence of "the absence of any reasonably legitimate or arguable reason for refusal" of their claim. It is undisputed that the awning was made of vinyl or cloth and was supported by an aluminum frame.
The Lunsfords argue that the awning was permanently attached to the house trailer and was constructed primarily of metal and, therefore, was not subject to the exclusion. However, no fair-minded person in the exercise of impartial judgment could reasonably infer that Independent lacked an arguable basis for denying the claim. Independent's interpretation of the exclusionary language in the insurance policy was, at least, "reasonable."
As to the breach of contract claim, the jury awarded the Lunsfords $25,000 in compensatory damages. The estimate to replace the damaged awning was $1603.68; the balance of the award represents damages for mental anguish. According to Orkin Exterminating Co. v. Donavan, 519 So.2d 1330 (Ala.1988), citing B & M Homes, Inc. v. Hogan, 376 So.2d 667 (Ala. 1979), a plaintiff may recover damages for mental anguish if the jury is satisfied "that the contractual duties imposed by this contract are so coupled with matters of mental solicitude as to the duty that is owed, that a breach of that duty will necessarily or reasonably result in mental anguish." The Lunsfords maintained the insurance policy for more than four years by paying the premiums when due. After discovering the damage to the awning, they properly notified the Elmer Tallant Agency, which then notified Independent. After an inspection of the damaged awning, an Independent agent notified the Lunsfords that the claim would be denied.
Mr. Lunsford testified at trial concerning the mental anguish he and his wife claimed to have suffered as a result of the denial of their insurance claim. That evidence presented a question for the jury.
We agree with the trial court that the evidence supported the jury's award of compensatory damages for breach of contract, including damages for mental anguish. However, the trial court erred in denying a directed verdict for the defendant on the bad faith claim. Therefore, we affirm that portion of the judgment awarding compensatory damages for breach of contract; but we reverse that portion awarding punitive damages on the bad faith claim, and on that claim we render a judgment for the defendant.
1911677AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED FOR THE DEFENDANT ON THE BAD FAITH CLAIM.
1911807DISMISSED.
HORNSBY, C.J., and SHORES, ADAMS and HOUSTON, JJ., concur.
MADDOX and INGRAM, JJ., concur in part and dissent in part.
MADDOX, Justice (concurring in part; dissenting in part).
I concur in that portion of the majority opinion holding that the plaintiffs failed to *980 offer substantial evidence of a bad faith failure to pay an insurance claim, but I must respectfully dissent from that portion affirming the award of damages for mental anguish arising out of the breach of this noncommercial insurance contract.
The law in this state is clear that there can be no recovery "for personal injury, inconvenience, annoyance or mental anguish and suffering in an action for breach of a contract of insurance." Vincent v. Blue Cross-Blue Shield of Alabama, Inc., 373 So.2d 1054, 1056 (Ala.1979) (emphasis added); see, e.g., United Services Auto Ass'n v. Wade, 544 So.2d 906, 913 (Ala. 1989); Aetna Life Insurance Co. v. Lavoie, 505 So.2d 1050, 1056 (Ala.1987) (Maddox, J., concurring specially); Sanford v. Western Life Insurance Co., 368 So.2d 260, 263-64 (Ala.1979); Stead v. Blue Cross-Blue Shield of Alabama, 346 So.2d 1140, 1143 (Ala.1977) (quoting F. Becker Asphaltum Roofing Co. v. Murphy, 224 Ala. 655, 657, 141 So. 630, 631 (1932)); Alabama Farm Bureau Mutual Casualty Insurance Co. v. Smith, 406 So.2d 913, 916 (Ala.Civ.App.), cert. denied, 406 So.2d 916 (Ala.1981).
The result reached in this case shows why I believe that we should re-examine the rule of law that permits an insured to sue for a bad faith failure to pay, and should permit, instead, an insured to recover consequential damages and attorney fees upon a showing that an insurer has failed to pay a claim, without just cause. I have believed for several years that this Court should adopt an alternative to the bad faith claim. See my dissenting opinion in Continental Assur. Co. v. Kountz, 461 So.2d 802 (Ala.1984) (Maddox, J., dissenting), where I discussed the development of the tort of bad faith and why I thought that either this Court or the Legislature should provide an alternative to the tort of bad faith failure to pay a noncommercial insurance claim, by permitting the recovery of attorney fees and consequential damages when a policyholder was forced to go to court in order to establish entitlement to insurance benefits.
In the Kountz dissent, I noted that this Court should probably consider expanding the rule of law relating to the recovery of contractual damages in noncommercial insurance contract cases, and in a footnote to that case I suggested that the Legislature might wish to address the problem by adopting legislation.[1] In that dissent, I also said that "in the absence of legislation, I would favor a rule of law which would allow the recovery of consequential damages, including reasonable attorneys' fees, when a party is forced to go to court to establish his claim under an insurance policy." 461 So.2d at 812. I further said that "in our scheme of government, policy questions like [those presented in a bad faith failure to pay case], especially since they involve the heavily regulated insurance industry, should properly be addressed by the Legislature."[2] 461 So.2d at 812.
I spelled out in the Kountz dissent why I thought this Court should consider a rule allowing extracontractual damages:
"Another concern of mine is the fact that because of this Court's adoption of the `bad faith' tort, there very well may be instances when insurance companies pay claims which factually should be denied; nevertheless, the company opts to pay rather than face the possibility of a lawsuit. If those instances do occur, then premiums for all other policyholders necessarily rise to offset these added costs. On the other hand, there no doubt are instances when companies require policyholders to resort to a court suit, even though the factual basis for denial of a claim is questionable. The fairest *981 rule, it would appear to me, in view of these two policy considerations, would be one which would allow any party to a non-commercial insurance contract, who is forced to go to court in order to recover his contract claim to recover his consequential damages as well, including reasonable attorneys' fees."
461 So.2d at 813. The same public policy considerations that concerned me and other members of the Court in Chavers v. National Security Fire & Casualty Co., 405 So.2d 1, 7 (Ala.1981), when the tort was recognized, continue to concern me. Those public policy considerations are: What type of remedy should be employed when an insurer fails to pay a valid claim made by its insured? What is the measure of damages? Should this Court be deciding these public policy issues?
The failure of insurers to promptly pay what policyholders consider just claims is of great public concern. That concern is evidenced by the proliferation of cases in which policyholders seek not only redress under the contract, but also punitive damages under a "bad faith" theory. Juries, like this jury, are responding with verdicts of such magnitude that insurers are raising federal constitutional arguments that their due process rights are being violated. Cf. Pacific Mutual Life Ins. Co. v. Haslip, 553 So.2d 537 (Ala.1989), affirmed, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). The Legislature has responded to the problem, in part, by adopting legislation commonly referred to as the Tort Reform Package, which seeks to regulate the award of punitive damages by setting a cap on the recoverable damages, except in certain instances where there was a pattern and practice of wrongful conduct. See, Ala.Code 1975, § 6-11-21.
My position from the beginning has been that this Court should modify the rule that did not permit recovery for personal injury, inconvenience, annoyance, or mental anguish and suffering in an action for breach of a contract of insurance, and instead should adopt a rule authorizing the recovery of extracontractual damages. This Court, in Stead v. Blue Cross-Blue Shield of Alabama, 346 So.2d 1140 (Ala.1977), was faced squarely with the legal question presented here: In an action brought for the breach of an insurance contract, can the insured recover damages for personal injury, inconvenience, annoyance, or mental anguish and suffering? Five members of this Court held that such damages were not recoverable. I did not participate in that decision, but I did participate in Chavers v. National Security Fire & Casualty Co., 405 So.2d 1, 7 (Ala.1981), in which a majority of the Court recognized the tort of bad faith failure to pay an insurance claim. I dissented in Chavers, and I still am of the opinion that the remedy sought in Stead was much preferable to that sought in Chavers, but I have found little support for that position.
The result reached here basically adopts the rationale that the insureds in Stead sought to have this Court adopt, and, because it allows the recovery of damages that this Court said, in Stead, were not recoverable, I believe that this case overrules Stead. I believe the remedy I suggested in my dissent in Kountz would be the fairest remedy and the easiest to apply. I believe we should adopt it.[3]
*982 In summary, I am of the opinion that the judicially created tort of "bad faith" has had, and continues to have, serious policy ramifications that I still believe should be addressed by the legislative body of our government, but in the absence of legislation, I think that the judiciary can determine that, in cases such as this, damages in addition to those provided for by the contract are necessary to make the policyholder whole. Consequently, I agree that the policyholder should be able to recover consequential damages for the breach of the contract.
NOTES
[1] I called the Legislature's attention to a piece of legislation included in an article by K. Harvey and T. Wiseman in 72 Ky.L.J. 141 (1983-84) entitled First Party Bad Faith: Common Law Remedies and a Proposed Legislative Solution. 461 So.2d at 812.
[2] The Legislature did adopt a so-called "Tort Reform Package" of bills, and included in the package was one that limited the amount that could be awarded as punitive damages. That legislation is being attacked as unconstitutional in a case now pending before this Court. Henderson v. Alabama Power Co., 1901875, 1993 WL 222341 (Ala.1993).
[3] In Kountz, I said:

"By dissenting in this case, and in others presented to this Court, I may appear to believe a plaintiff in a case such as the present one should be limited to his usual contract damages, but I have no such views, and have never entertained them. The Chief Justice, in his dissent in [Aetna Life Insurance Company v.] Lavoie [470 So.2d 1060 (1984)], using a principle which I have long held to be the law, has suggested what I believe would be a sound rule of law to establish in these insurance contract cases. He suggested that this Court should adopt a rule that would restrict the cause of action, in situations such as exist here, to one sounding in contract, but expand the contractual damages rules for non-commercial insurance contracts. To me, that would be a just and fair rule which could be easily applied, and would be a rule this Court could unanimously adopt. Of course, the Legislature is the body normally relied upon to correct any ills which might exist in the insurance industry regarding payment of insurance claims."
461 So.2d at 811-12 (emphasis original).