327 So.2d 711

**LOEB AND CO., INC.**

**v.**

**D. L. MARTIN, Jr.**

**SC 1524.**

Supreme Court of Alabama.

Feb. 20, 1976.

Norman W. Harris and William E. Shinn, Jr., Decatur, for appellant.

W. H. Rogers, Moulton, for appellee.

FAULKNER, Justice.

This is an appeal from an order of the Circuit Court of Lawrence County denying Loeb's motion for new trial. We reverse.

## THE FACTS

Martin entered into a forward contract to sell cotton to Loeb for 33 cents per pound. When time came to deliver, a dispute arose between Martin and Loeb as to how much cotton Loeb purchased under the contract. We set out the facts leading to the dispute.

In March, 1973, Loeb's agent, Agnew, learned that Martin wanted to sell his cotton for 33 cents a pound. Agnew telephoned Martin and asked him if he would take 33 cents for his cotton. Martin answered yes, and stated he was going to plant about the same amount as he had in 1972. Loeb, through Agnew, had purchased a portion of Martin's 1972 crop. During the telephone conversation, Martin and Agnew arranged a meeting place to close the trade.

When they met to discuss the terms of the contract, Agnew asked Martin how much cotton he was going to have. Martin

said he was going to plant 400 acres or more. Agnew said, "Well, I will buy 400 acres." Agnew made a handwritten memorandum of the agreement. The pertinent part of the agreement is as follows:

"SALE & PURCHASE AGREEMENT. 1973 COTTON CROP.

We confirm having purchased from D. L. Martin, Jr., Courtland, Ala. ALL COTTON PRODUCED ON 400 ACRES. PRICE 33.00¢ lb. Crop Run. . . ."

At the time of the agreement, Martin had not planted his crop. Subsequently, he planted cotton in two patterns: one pattern known as "solid" pattern where rows are planted consecutively, and the other known as "two and one skip row," where two rows are alternated with one row of idle land. Martin's "solid" row planting was 163.2 acres, while his "skip row" planting was 342.2 acres.

Martin's cotton allotment for 1973 was 401.9 acres. The A.S.C.S. office calculated Martin had 163.2 acres of solid row cotton, and 229.6 acres of skip row, totaling 392.8 acres of cotton. A.S.C.S. subtracted the idle land in the skip row pattern in arriving at its figure of 229.6 acres. It did not count one-third of the land used in the skip row planting.

The market price of cotton had doubled in the fall of 1973 from what it was in the spring. And, in September or October, Martin called Agnew to ask if they were going to divide the cotton as they had in 1972. Agnew replied, he guessed so, and then he asked Martin if he had planted more cotton than he sold. Martin said, "Yeah," and told Agnew that he had planted over 500 acres. He told Agnew, "I am going to deliver you acres of land this year instead of acres of cotton." Agnew replied, "We can't take that." Thus, the dispute arose.

Martin contended the contract called for his delivering all cotton produced on *400 acres of land*. Loeb contended the contract meant that Martin was to deliver *400 acres of cotton*. Martin eventually delivered his entire cotton crop to Loeb under protest, and reserved the right to litigate the extent of his obligation under the contract. The parties stipulated that if Martin was correct, his damages would be $12,516.25.

At the conclusion of Loeb's evidence, the trial court directed a verdict for Martin, on his written motion. Loeb's motion for new trial was denied.

*Issues*

The primary issue is whether the trial court was correct in granting the motion for a directed verdict. Another issue is whether the trial court improperly excluded evidence of customs and usage.

*The Directed Verdict.*

Rule 50, Alabama Rules of Civil Procedure, providing for directed verdicts, is identical to Rule 50 of the Federal Rules of Civil Procedure, except for expansion of time limits therein from 10 to 30 days and express retention of the scintilla evidence rule under Subsection (e). The motion for directed verdict performs the functions of motion to exclude the evidence, demurrer to the evidence, and motion for the affirmative charge. See Committee Comments.

Professor Moore says the directed verdict is normally used in two overlapping categories of cases: First, where there is a complete absence of pleading or proof on an issue or issues material to the cause of action or defense, and second, where there are not any controverted issues of fact upon which reasonable men could differ. Moore's Federal Practice, Vol. 5A, p. 2317.

In this case we are concerned with the second category. Were there no controverted issues of fact upon which reasonable men could differ? What standard do we use

to determine the absence of any controverted issues of fact?

In *Brady v. Southern Railway*, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943), the Supreme Court of the United States announced the standard under the Federal Rules of Civil Procedure, in the following terms:

"When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by nonsuit, directed verdict or . . . without submission to the jury, or by judgment notwithstanding the verdict. . . ."

But, where there is conflicting evidence or where there is insufficient evidence, the Supreme Court says a directed verdict is improper. *Wilkerson v. McCarthy*, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497 (1949); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). In this last cited case, Continental sued under § 4 of the Clayton Act to recover private treble damages, and alleged violations of §§ 1 and 2 of the Sherman Act. The jury returned a verdict for the defendants. The Court of Appeals had held that there was insufficient evidence to justify a jury finding, and the defendant should have gotten a directed verdict. The Supreme Court said the Appeals Court erred by failing to view evidence in the light most favorable to the plaintiffs, and by not giving them benefit of all inferences which the evidence fairly supported; it was the jury's function to weigh the evidence and the inferences to be drawn therefrom, and to come to an ultimate conclusion as to the facts. The court ordered a new trial.

The Fifth Circuit Court of Appeals held in *Herron v. Maryland Casualty Co.*, 347 F.2d 357 (1965), that the trial judge may grant a directed verdict only when there is no evidence, which, if believed, would authorize a verdict against the movant. The trial judge must draw against the movant all reasonable inferences most favorable to the party opposing the motion. The case must be submitted to the jury if reasonable men may reach different conclusions. Cf. *Geddes v. Daughters of Charity of St. Vincent De Paul, Inc.*, 348 F.2d 144 (5th Cir. 1965). And, in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) a "SUBSTANTIAL EVIDENCE OR REASONABLE MAN TEST" was set out, as follows:

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses."

It will be noted that the Federal Court does not have the scintilla rule, while our Rule 50(e) retains it. This subsection specifically states that the court may direct a

verdict, or enter judgment notwithstanding the verdict under this rule, whether or not the party making the motion has the burden of proof, *in accordance with the scintilla evidence rule.*

In *Noonan v. Midland Capital Corporation*, 453 F.2d 459 (2d Cir. 1972) the "Reasonable Man Test" was applied. The court said,

> "We apply, of course, the accepted rule that '[w]hether the motion is one to direct a verdict or to set aside a verdict which the jury has returned, the test applied by the court is the same. The evidence must be viewed in the light most favorable to the party other than the movant. The motion will be granted only if (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair minded men in the exercise of impartial judgment could not arrive at a verdict against him.' "

■ Whether the "Reasonable Man Test" or the scintilla evidence rule is applied here, the result is the same: the trial court erred in directing a verdict against Loeb. In reviewing the evidence, we find Martin saying to Agnew, "I am going to deliver you acres of land this year instead of acres of cotton," and Agnew replying, "We can't take that." And, also, the agreement is subject to two interpretations. Martin's evidence was that he intended the phrase in writing to mean, "All cotton planted on 400 acres of land," and Agnew says he intended the phrase to mean "400 acres of cotton." Moreover, there was evidence that it takes 3 acres of land to make two acres of cotton when the cotton is planted the skip row pattern; that Martin's allotment for 1973 was 401.9 acres; that the A.S.C.S. office calculated Martin had 163.2 acres of solid row cotton and 229.6 acres of skip row, totaling 392.8 acres of cotton, and evidence of the 1972 crop under similar contracts. We are of

the opinion the evidence was insufficient for a "one way" verdict, and the directed verdict was improper.

*Evidence of Custom and Usage*

■ In explaining the reasons for his decision to direct a verdict for Martin, the trial court said:

> "What in effect has happened is, the Court has ruled, by declining to accept those witnesses as being competent to testify, in effect that there is no such thing as a custom or usage in the trade concerning to [sic] forwarding contracts with reference to cotton."

> \*    \*    \*    \*    \*    \*

> "Well I think that is set out very well in the latest case, which we have been discussing the last day or two, that you only come into the question of concerning custom and usage, it only becomes applicable where there is an ambiguity in the contract, and in this contract, quite frankly, to me it's pretty plain outside of the evidence, but be that as it may, I think that the defendants haven't been able to establish by any proof, and I think, actually, their offer of proof has been quite to the contrary, that there is no such thing as a custom and usage in forwarding contracts as pertains to commodity of cotton, because that was a short lived thing in this state and in this area. I mean, that is something that is almost like mushrooms coming up and dying away forever and to never, never to come back."

The "latest case" the trial judge was referring to in his colloquy was *Jewell v. Jackson & Whitsitt Cotton Co.*, 294 Ala. 112, 313 So.2d 157 (1975), a case heard ore tenus. In *Jewell* this court said,

> "It is undisputed that this contract in 1973 was the first time Jewell had ever contracted or booked his cotton crop; he was not aware of any custom or usage relating to the contracting of a cotton

crop; the first time he ever heard of it was when this case came up; he was not aware of any custom or usage when he signed the contract."

We are unable to say Martin was as unknowledgable as Jewell apparently was. Otherwise, why would he say to Agnew, "I am going to deliver you acres of land this year instead of acres of cotton."

Evidence of custom and usage was admissible by virtue of U.C.C. § 2–202, Code of Ala., Tit. 7A, providing that confirmatory memoranda may be explained by course of dealing, or usage of trade. The Official Comment to U.C.C. § 2–202 says,

"2. Paragraph (a) makes admissible evidence of . . . usage of trade . . . to explain or supplement the terms of any writing stating the agreement of the parties in order that the true understanding of the parties as to the agreement may be reached. Such writings are to be read on the assumption that the . . . usages of trade were taken for granted when the document was phrased. Unless carefully negated they have become an element of the meaning of the words used."

Whether there was a custom and usage of trade was a question of fact for the jury to determine, under the present conditions. Cf. Official Comment to U.C.C. § 1–205, and Anderson's Uniform Commercial Code, § 1–205:6, p. 175.

Reversed and remanded.

MERRILL, MADDOX, JONES, SHORES and EMBRY, JJ., concur.