349 So.2d 1132 (1977)
Carolyn H. ALFORD, Individually, etc., et al.
v.
CITY OF GADSDEN, a Municipal Corporation.
SC 2342.
Supreme Court of Alabama.
September 9, 1977.
Rehearing Denied September 30, 1977.
*1133 James L. Shores, Jr., Birmingham, Buford L. Copeland, George C. Hawkins, Gadsden, for appellants.
Roger C. Suttle of Inzer, Suttle, Swann & Stivender, Gadsden, for appellee.
BLOODWORTH, Justice.
Defendants, Carolyn Alford, et al. appeal from a directed verdict in favor of the City of Gadsden in a declaratory judgment action in which the Court voided a concession stand lease. We reverse and remand.
In 1964, the City of Gadsden advertised for bids to lease the concession stand at Noccalula Falls Park. Jack W. Alford was the successful bidder at $100 per month.
On April 7, 1964, the city, by ordinance authorized a written, five-year lease with Alford to be dated April 1, 1964, authorizing him to operate the concession facility, which is now called "Noccalula Nic Nac" in Noccalula Falls Park and is a public park owned by the city. The lease contained an option to renew for an additional five-year term. The lease also contained a provision stating that the lessee would have the privilege of negotiating for another lease period at the end of the ten-year term of the lease. On December 1, 1964, the City Commission approved a five-year extension of the lease, beginning November 1, 1969. The rent of $6,000 was prepaid. In 1965, Mr. Alford was killed. The city approved Mrs. Alford's sublease to one Clark Lewis and James Kilgo on April 18, 1969. By resolution dated September 18, 1970, the City Commission extended the 1964 lease for an additional five-year term from October 1, 1970, through September 30, 1975. By resolution dated March 1, 1974, the original lease was once more extended to September 30, 1980. This last resolution was not signed in the name of the city but was signed by the mayor and two commissioners, purporting to act for the city. The resolution stated that Carolyn Alford had paid $6,000 in advance to the city as rent for the five-year extension period to 1980.
The City of Gadsden brought this action for declaratory judgment, in the Circuit Court of Etowah County, contending inter alia, that the lease was invalid by reason of the city's failure to comply with Tit. 37, § 477(2), and that neither Mrs. Alford, as executor of her husband's estate, nor defendant Clark Lewis, her sublessee, had any right to possession of the property. In their answer, defendants asserted, inter alia, that the lease was valid and that the city was estopped to deny its validity, since they had relied to their prejudice upon the action of the city in renewing the lease. Defendants also included a counterclaim for damages.
At the conclusion of the evidence, the city's motion for a directed verdict was granted. In its final judgment the court held, inter alia, that the April 1, 1964, lease expired on April 1, 1974; that the March 1, 1974, resolution which attempted to extend the lease was null and void; that the city is entitled to possession of the concession stand; that defendant Clark Lewis must pay all rents under the sublease to the city; that defendants were not entitled to recover damages asserted in their counterclaim. The judgment was later amended to tax costs. Defendants' motion for a new trial was overruled, hence this appeal.
Appellants (defendants below) make several contentions on this appeal. First, they contend that the concession facility is located on property needed "for public or municipal *1134 purposes" and, therefore, Tit. 37, § 477(2), ante, is inapplicable. Consequently, appellants argue, an ordinance authorizing the extension of the lease is unnecessary and a resolution will suffice. Appellants then contend that even if an ordinance was required, the city is estopped to deny the validity of the lease, since it has already accepted $6,000 in rental payments for the term ending September 30, 1980, and since appellants have spent $8,500 in improvements. Appellants finally contend that the trial court erred in granting the city's motion for directed verdict, since factual issues remain to be resolved by the jury with regard to estoppel.
Appellee (city) contends that the resolution attempting to extend the lease was improper for two reasons. First, the city argues that Tit. 37, § 477(2), ante, explicitly requires an ordinance instead of a resolution. Second, it argues that even if a resolution were proper, this one would be invalid because it fails to comply with the mandatory provisions of Tit. 37, § 467, infra. Third, the city contends that it is not estopped to deny the validity of this purported contract, since it is not a contract at all.
Tit. 37, § 467 provides:
"467. (1899) (1183) Contracts of municipalities; how executed.Contracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town, by the officers authorized to make the same, and by the party contracting. In cases not otherwise directed by law, or ordinance, such contracts shall be entered into and executed by the mayor in the name of the city or town and all obligations for the payment of money by the municipality, except for bonds, and interest coupons, shall be attested by the clerk. This section shall not be construed to cover purchases for the ordinary needs of the municipality."
Tit. 37, § 477(2), provides:
"§ 477(2). Lease of unneeded real estate.The governing body of any city or town in this state may, by ordinance to be entered on its minutes, lease any of its real property, not needed for public or municipal purposes, and a lease made by the mayor in accordance with such ordinance shall be binding for the term specified in the lease, not to exceed a period of ninety-nine years; provided that in counties having a population of not less than 225,000 and not more than 400,000 inhabitants, according to the last or any subsequent federal decennial census, such limitation of the term to a period of ninetynine years shall not apply to any oil, gas or mineral lease made in accordance with such ordinance. (1953, p. 1135, § 2, appvd. Sept. 19, 1953; 1957, p. 574, appvd. Sept. 5, 1957.)"
It is, of course, the general rule that a city cannot lease, for private purposes, property which is already held for public use and which is being devoted to public use, without specific statutory authority therefor. Anderson v. Adams, 291 Ala. 523, 283 So.2d 416 (1973); City of Bessemer v. Huey, 247 Ala. 12, 22 So.2d 325 (1945).
On the other hand, it is established law that, "The park authorities ordinarily are empowered to permit, by lease, license, or similar arrangement, the establishment within the confines of a park of places for furnishing food and beverages, or other refreshments, and to grant privileges and concessions for conducting within the park those transactions which are customarily associated with public use and enjoyment of parks and park properties." 10 McQuillin, Municipal Corporations, § 28.53, pp. 185-86.
We do not believe these two propositions conflict, for the first generally speaks to the power of the city to lease property which is needed for public purposes for a term of years, while the latter statement of law pertains to a city's lease of only a very small portion of a larger tract of the property devoted to the public use, as here.
Thus, we think it clear that the city had the general authority to execute a lease for this concession stand in the public park.
We pretermit the city's first two contentions and move to a consideration of the third issueestoppeland to a consideration as to whether the directed verdict was *1135 proper. In order to reach these issues, we assume, without deciding, that an ordinance is required to extend the lease (Tit. 37, § 477(2)) and that the contract is required to be executed in the name of the city by the mayor (Tit. 37, § 467).
Appellants contend that appellee is estopped to deny the validity of this contract, since appellee has accepted $6,000 in advance rental payments for the term. Appellee's response is that it cannot be estopped by a contract that it did not execute.
The doctrine of estoppel is rarely applied against a municipal corporation, but it may be applied in a proper case. See, e. g., City of Montgomery v. Weldon, 280 Ala. 463, 195 So.2d 110 (1967); Powell v. City of Birmingham, 258 Ala. 159, 61 So.2d 11 (1952); Brown v. Tuskegee Light & Power Co., 232 Ala. 361, 168 So. 159 (1936).
A municipality cannot be estopped from questioning the legality of a contract into which it had no authority to enter. City of Leeds v. Town of Moody, 294 Ala. 496, 319 So.2d 242 (1975). Nor, may the doctrine of estoppel authorize a city to do that which it has no authority to do. Id.; Board of School Commissioners of Mobile County v. Hudgens, 274 Ala. 647, 151 So.2d 247 (1963).
There is another instance in which our Court has held that the doctrine of estoppel cannot be applied against a city. In City of Mobile v. Mobile Electric Co., 203 Ala. 574, 84 So. 816 (1919), this Court held, over a vigorous dissent, that a city cannot be estopped to deny a contract into which it did not legally enter.
In City of Mobile, supra, a resolution was not signed in the name of the city but was signed by the commissioners purporting to act for the city. This Court held that there was neither substantial nor attempted compliance with "one of the most important and mandatory requirements of section 1183 of the Code." (This section is now Tit. 37, § 467.) Id. at 579, 84 So. at 820.
It appears that no other Alabama case supports this proposition; nor is it the law elsewhere. Although the opinion in City of Mobile cites the McQuillin text and two cases from foreign jurisdictions, these cases and the text do not directly support this proposition.
In view of the fact that this case has not been followed elsewhere, that it has not been followed in Alabama and that the cases and text which are cited as authority do not support the proposition, we hereby overrule City of Mobile, insofar as it holds that the city cannot be estopped to deny the contract executed by its commissioners.
Given this, we think the trial court's directing a verdict for appellee constituted reversible error pursuant to ARCP 50(a).
Where a directed verdict is requested, the entire evidence must be viewed in a light favorable to the opponent. When a reasonable inference may be drawn, which is adverse to the party requesting the directed verdict, the directed verdict is properly refused. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975).
In determining the propriety of granting a motion for directed verdict, the court must indulge every inference in favor of the nonmoving party. Ford Motor Company v. Rogers, 327 So.2d 736 (S.Ct.Ala. 1976); Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975).
In this case, appellants have interposed the defense of estoppel. As we so recently held, estoppel is generally a mixed question of law and fact. Imperial Group, Ltd. v. Lamar Corporation, 347 So.2d 988 (S.Ct.Ala.1977); Humphrey v. Boschung, 287 Ala. 600, 253 So.2d 769 (1971).
Given the rule that estoppel, generally, is a mixed question of law and fact; and, given the facts that appellants have spent $8,500 in improvements on the property and that the city has accepted $6,000 in advance rental payment from Mrs. Alford, we find that there is sufficient evidence for the submission to the jury of the issue of appellants' estoppel defense.
"This court has consistently held that, where there is conflicting evidence, it is the jury's function to pass on that evidence *1136 and any inference to be drawn therefrom; and that it is improper to direct a verdict for either side where conflict in the evidence exists. Loeb and Co., Inc. v. Martin, 295 Ala. 262, 327 So.2d 711 (1976)." Hill v. Metal Reclamation, Inc., a corp., et al., 348 So.2d 493 (Ala.1977).
Therefore, a directed verdict was improper, and this case is due to be reversed and remanded for a new trial.
REVERSED AND REMANDED.
MADDOX, FAULKNER, JONES, ALMON, EMBRY and BEATTY, JJ., concur.
TORBERT, C. J., dissents.
SHORES, J., recuses herself.
TORBERT, Chief Justice (dissenting):
I respectfully dissent.
The statutory requirements for execution of municipal contracts as set out in Tit. 37, § 467, are mandatory and should be strictly complied with. Council v. City of Dothan, 236 Ala. 166, 181 So. 293 (1938). The statute provides that the contract be in writing, that it be executed in the name of the city by the officers authorized to make such contracts, and that it be signed by the other party contracting. The "resolution contract" in the present case fails to comply with the statute in two respects, i. e., the contract was not signed in the name of the City of Gadsden and it was not signed by appellant Carolyn H. Alford. In Garner v. State, 229 Ala. 600, 158 So. 546 (1934), this court stated the following concerning municipal contracts:
"A contract with the city must be executed and authorized as directed by law to be legal. If not thus done, it is non est factum."

Id. at 601, 158 So. at 547 (citation omitted).
In light of this analysis, I feel that the majority incorrectly overrules City of Mobile v. Mobile Electric Co., 203 Ala. 574, 84 So. 816 (1919). The present case is factually similar to City of Mobile. That case also involved a resolution which was signed by commissioners but which was not signed in the name of the City of Mobile. This court held that the City of Mobile could not be estopped to deny this contract as it failed to substantially comply with statutory requirements for the execution of municipal contracts.
I find no distinction between the case presently before this court and City of Mobile. Therefore, I would hold that the City of Gadsden cannot be estopped to deny the "resolution contract" as the City of Gadsden did not legally execute this contract.