661 So.2d 1158 (1995)
CITY OF PRATTVILLE, et al.
v.
Leon Harold JOYNER.
1931245.
Supreme Court of Alabama.
May 12, 1995.
*1159 George H. Howell of Howell, Sarto & Howell, Prattville, for Appellants.
Alfred Q. Booth, Prattville, Donald G. Madison, Montgomery, for Appellee.
J. Kenneth Smith, Montgomery, for Amicus curiae Alabama League of Municipalities, in support of the appellant City of Prattville.
HORNSBY, Chief Justice.
This case presents the issue whether the City of Prattville may terminate fire protection services to the residents and businesses located within its police jurisdiction.[1] On October 19, 1993, the Prattville City Council passed an ordinance that withdrew fire protection from Prattville's police jurisdiction. Originally, the ordinance was to be in effect as of January 1, 1994; however, its effective date was delayed until May 1, 1994. On April 29, 1994, Leon Joyner, the owner of a business located within the Prattville police jurisdiction, sought declaratory relief and an order restraining the City from terminating the fire protection. On April 30, 1994, the trial judge temporarily restrained Prattville from terminating fire protection, and on May 15, 1994, after a hearing on the merits, the trial court entered a preliminary injunction. Prattville appeals.
Although this appeal presents several questions, the dispositive issue is whether Prattville owes a duty to provide police and fire protection[2] to residents of the police jurisdiction and to people who, like Joyner, own businesses within the police jurisdiction. The trial court's order set out the general issue in this case as follows:
"This lawsuit may more appropriately be said to present an ultimately broader issue of whether a municipality owes a duty to provide police and fire protection to individual and/or business residents located within the statutorily defined police jurisdiction of the municipality. Several questions might be posed for purposes of inquiry and analysis of the existing rationale found in our case law. For instance, if a `duty' does exist for a municipality to provide police and fire protection to its police jurisdiction, is the `duty' derivative from the purpose for the statutory creation and definition of the area around a city known as the `police jurisdiction'? Or does any existing `duty' to provide such police and fire protection only arise when a municipality collects certain revenue from the businesses and residents of the police jurisdiction? If so, to what extent is the performance of such `duty" legally altered, amended or eliminated by a municipality's choice to withdraw services as opposed to continuing services while collecting sufficient revenues from the police jurisdiction to cover the incremental costs of covering the area with police and fire protection? In other words, does any existing `duty' dissipate at the will of those council members entrusted to govern the affairs of the City or does such a `duty" arise by operation of law requiring the City to perform the `duty' for the benefit of those located within the police jurisdiction?"
(Emphasis original).
This Court has not addressed a case where a city has chosen to collect business license fees and sales tax in exchange for providing police and fire protection, and has then withdrawn such services over the objection of the *1160 residents and owners of businesses in the police jurisdiction. Rather, the case law in this area has developed through the numerous challenges made by businesses located in the police jurisdictions of municipalities, which contested the legality of the city's assessment of license taxes or other revenue measures. Although not directly on point, that case law is at least instructive to our analysis in this case.
In 1978, the United States Supreme Court addressed the relationship between a municipality and the businesses and residents located within the municipality's police jurisdiction, in Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978). In Holt Civic Club, an unincorporated civic association and certain residents of Holt, a small, rural unincorporated community on the outskirts of Tuscaloosa, brought a statewide class action to challenge the constitutionality of Alabama statutes that subjected the community to Tuscaloosa's police and sanitary regulation, to the criminal jurisdiction of the city's court, and to the city's power to license businesses, trades, and professions, but that did so without providing those persons an opportunity to participate in the political processes of the city. The Court held valid Alabama's statutes allowing municipalities to exercise a certain amount of power over their police jurisdictions; it explained:
"Unincorporated communities like Holt dot the rim of most major population centers in Alabama and elsewhere, and state legislatures have a legitimate interest in seeing that this substantial segment of the population does not go without basic municipal services such as police, fire and health protection. Established cities are experienced in the delivery of such services, and the incremental cost of extending the city's responsibility in these areas to surrounding environs may be substantially less than the expense of establishing wholly new service organizations in each community."
Holt Civic Club, 439 U.S. at 74, 99 S.Ct. at 392.
Holt Civic Club followed several opinions of this Court that had upheld certain regulatory ordinances as a proper exercise of the police power and as applicable to the municipality's police jurisdiction. See Standard Chemical & Oil Co. v. City of Troy, 201 Ala. 89, 77 So. 383 (1917), and Walden v. City of Montgomery, 214 Ala. 409, 108 So. 231 (1926). Soon after those two cases there followed Alabama cases indicating that the amount of tax levied upon a particular business located within the police jurisdiction "must reflect the reasonable compensation for the expense of municipal supervision over the particular business." Ex parte City of Leeds, 473 So.2d 1060, 1061 (Ala.1985). See also Alabama Power Co. v. City of Carbon Hill, 234 Ala. 489, 175 So. 289 (1937), and Hawkins v. City of Prichard, 249 Ala. 234, 30 So.2d 659 (1947).
In 1989 this Court expanded the notion of taxing the businesses and residents of the police jurisdiction in order to compensate the municipality for providing certain services. In State Department of Revenue v. Reynolds Metals Co., 541 So.2d 524 (Ala. 1988), this Court held that a municipality may collect reasonable expenses from within the police jurisdiction, regardless of the individual benefit to each business. Reynolds Metals provides a close look at the historical development of the concept of allowing municipalities to tax residents and businesses in its police jurisdiction in exchange for providing police and fire protection within that police jurisdiction. In Reynolds Metals, this Court stated, "A municipality owes the residents of, and businesses located in, its police jurisdiction, the duty `to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience' of those residents and businesses." 541 So.2d at 531.
The Court further explained the relationship of a municipality and its police jurisdiction:
"The municipality owes a business within its police jurisdiction the duty to provide fire protection as well as police protection of its physical plant. Accidents, fires, crimes, and other hazards requiring the services of city government do not occur on such a regular basis that they can be measured or predicted as to each individual *1161 business. But in the world as it now is, they do happen; and the municipality must be prepared, with personnel and equipment, to respond to these calamities when they do occur."
Id. While it might seem that Reynolds Metals potentially answers the question at hand, Reynolds Metals addressed only the relationship between the business license tax imposed in the police jurisdiction and the cost of the services being rendered there. The municipality in Reynolds Metals did not challenge whether it owed the residents within its police jurisdiction a "duty" to provide such services. Therefore, when the Court held in Reynolds Metals that a duty existed, it held that a city that accepted the responsibility to provide the service was entitled to collect taxes for the reasonable value of the service.
In all cases before today, the municipality was attempting to establish a relationship with the police jurisdiction by providing health and safety services while being compensated through a fair taxing system. The reasons for establishing such a relationship lie within the long-established public policy that the State has a significant interest in promoting the health and safety of the large number of people residing or conducting business outside the limits of incorporated municipalities and that the State has a significant interest in promoting the growth and development of these areas. Moreover, the State correctly recognizes that without certain protections and rules within police jurisdictions, the welfare of those within the corporate limits of the municipality would suffer.
In the present case, Prattville seeks to terminate this relationship. The primary focus of Prattville's argument is that all the statutes granting cities the power to govern police jurisdictions are "enabling acts" that do not establish a statutory "duty" to provide police and fire protection services to the police jurisdictions.
According to Prattville, a city can elect what services it will provide and can tax businesses and residents in the police jurisdiction at an amount that does not exceed the reasonable cost of those services. Therefore, Prattville maintains, a "duty" arises only as a result of the activity that is undertaken by the city. Prattville further argues that, based on its calculations, the cost of providing fire protection to the police jurisdiction far exceeds the amount it is allowed to tax within the police jurisdiction. Therefore, Prattville argues, it has the choice to continue or to terminate such services.
Joyner argues first that Prattville has a duty to provide police and fire protection. Moreover, Joyner argues that Prattville accepted this duty by collecting revenues sufficient to cover the cost of providing both police and fire protection. Therefore, he argues, Prattville should not be allowed to withdraw the fire protection. As previously stated, pursuant to Reynolds Metals, supra, a municipality can lawfully tax the businesses or residents of the police jurisdiction in an amount estimated to be reasonably necessary to compensate the municipality for the cost of providing such services. Joyner maintains that he pays license fees for operating a business in the police jurisdiction and that in the operation of his business he collects and remits sales taxboth in exchange for the services of police and fire protection. Because Prattville was already taxing in its police jurisdiction at the maximum rate allowed by Alabama law, which is ½ the tax rate applied within its corporate limits, Joyner maintains that Prattville must provide both police and fire protection. In the alternative, Joyner argues that regardless of the lack of explicit statutory authority creating this duty, once a city chooses to create this relationship between the municipality and the police jurisdiction, the City has a duty to continue it. Joyner bases his argument on the theory of reasonable reliance. Joyner argues that, based on this theory, Prattville should be estopped from terminating its fire protection service to the police jurisdiction. Although it is not clear how and when this "duty" arises, and whether the "duty" can be terminated, we conclude that the argument of reasonable reliance, based on the circumstances of this case, is meritorious, and we find it dispositive in this case.
In Alford v. City of Gadsden, 349 So.2d 1132 (Ala.1977), this Court explained *1162 that "[t]he doctrine of estoppel is rarely applied against a municipal corporation, but it may be applied in a proper case." Id. at 1135, citing City of Montgomery v. Weldon, 280 Ala. 463, 195 So.2d 110 (1967); Powell v. City of Birmingham, 258 Ala. 159, 61 So.2d 11 (1952); Brown v. Tuskegee Light & Power Co., 232 Ala. 361, 168 So. 159 (1936). In City of Guntersville v. Alred, 495 So.2d 566, 568 (Ala.1986), this Court stated that "[t]he doctrine of estoppel may apply against a municipal corporation when justice and fair play demand it." See also Alabama Farm Bureau Mutual Casualty Insurance Co. v. Board of Adjustment, 470 So.2d 1234 (Ala. 1985).
Other jurisdictions have also considered reasonable reliance as an appropriate basis for enforcing a duty on the part of the municipality. See, e.g., Helman v. Warren County, 111 A.D.2d 560, 489 N.Y.S.2d 430 (1985) (holding that because a municipality should realize that its actions would lead other parties to reasonably rely on its services, liability flows from the harm resulting from a plaintiff's reliance more so than from the assumption of the duty itself); City of San Antonio v. State ex rel. Criner, 270 S.W.2d 460 (Tex.1954) (holding that a city could not detach property from a municipality where the city dweller had become accustomed to, and had relied on, city services and privileges, such as water, sewer, and garbage services, schools, and fire and police protection, because the dweller is entitled to reasonable safeguards against destruction of these advantages); Cracraft v. City of St. Louis Park, 279 N.W.2d 801 (Minn.1979) (holding that if the plaintiff reasonably relied upon specific actions or representations by a municipality and that reliance caused him to forgo other alternatives, then the reliance tends to impose a duty of care).
Prattville suggests that Joyner had no legal advice that legitimized any reliance he may have had on the continuation of the fire protection service. That suggestion, however, is not based on the appropriate analysis for determining "reasonable reliance" under the facts of this case. Rather, whether the reliance was reasonable is determined by whether it was reasonable for Joyner, as the owner of a business located in the Prattville police jurisdiction, to rely on the continuation of fire protection provided by Prattville because that service had been provided for many years.
Fire Chief Archie Plyler testified that Prattville's fire department had been servicing the police jurisdiction for over 22 years. There was evidence that the Prattville Fire Department was one of the most successful and efficient in the state. Joyner presented evidence at the preliminary injunction hearing that the cost of his insurance would drastically increase if he no longer received fire protection from Prattville. An insurance agent testified that without Prattville fire protection services, the police jurisdiction would fall into the highest of 10 risk categories, and that that fact would result in insurers' charging businesses and residents of the police jurisdiction the highest insurance premiums allowed. For example, in regards to Joyner, this result is partially due to the fact that the nearest volunteer fire department is located 8 to 10 miles from Joyner's business in the police jurisdiction.
The fire department requires land developers building houses in the police jurisdiction to obtain approval for their subdivisions and to install fire hydrants in those subdivisions. Prattville's argument implies that Prattville would maintain a regulatory relationship with the builders in the police jurisdiction, without providing the beneficial service of fire protection.
As explained earlier, Joyner testified that he paid a business license fee and collected sales tax, which he remitted to the city, and that the amount he paid for a license was ½ the amount one would pay for a license to operate a business inside the municipal limits. This amount is the maximum license fee allowed for collecting revenues within the police jurisdictions. Ala.Code 1975, § 11-51-91. If the ordinance had become effective, Joyner was to continue paying this maximum amount, even though the city would no longer have been providing the fire protection. Joyner testified that when he built his business in the police jurisdiction five years earlier, he had expected to pay business license fees and to collect sales tax for Prattville. *1163 However, he said he also understood that in return Prattville would provide police and fire protection.
We agree with the trial court that Joyner's reliance on continuing city fire protection was reasonable under the facts of this case. After 22 years of providing fire protection and collecting revenues for that protection, Prattville may not arbitrarily terminate this service. Based on the evidence presented at the hearing, we conclude that Prattville's relationship with the businesses and residents in the police jurisdiction extended beyond the collection of revenue. If Prattville stops providing fire protection to the police jurisdiction now, there will be a drastic effect on businesses and residents of that area. Prattville must continue to provide fire protection to the police jurisdiction, because Prattville chose to collect revenue from the businesses and residents of the police jurisdiction in order to finance those services, and because Prattville created and maintained an ongoing relationship with the police jurisdiction in regard to those services. More importantly, the businesses and residents of the police jurisdiction reasonably relied on the continuation of that relationship.
Although the sole basis for estopping Prattville from terminating fire protection services to its police jurisdiction is the reasonable reliance by residents and business owners that those services would continue, it is relevant to address the rationale provided by Prattville for attempting to terminate the fire protection. Prattville maintains that, based on its calculations, the cost of providing fire protection to its police jurisdiction exceeded the revenue collected. In its calculations, Prattville divided its yearly fire department budget of $1,410,850 by the total number of fire calls answered, which was 3,690, in order to determine the cost per call. According to this calculation, the cost per call was $382.34. Prattville multiplied this figure by the number of calls received from the police jurisdiction to determine the total cost of providing fire protection to that area. The calculation showed that $296,761 was spent on fire services for the police jurisdiction, while revenues collected from the police jurisdiction were $222,006. Prattville argues that, based on these calculations, its decision to terminate fire protection is warranted. This argument is flawed in several respects.
First, Prattville's accounting method does not distinguish between fixed and variable costs. When calculating the cost, Prattville does not show that many of the expenses are "fixed," meaning that the expenses would exist as a result of providing fire protection within the corporate limits regardless of whether it provided the fire protection to the police jurisdiction. An accountant's testimony at the hearing explained the effect of this omission:
"A: I thought that the method used was overbroad and included costs that weren't necessarily attributable to the additional services.
"Q: In other words, were sound accounting principles used in arriving at the figure that the City proposes or propounds as being the cost of providing these services to people in the PJ [police jurisdiction]?
"A: No.
"Q: Now, could you tell us what specifics that they may have violated?
"A: Well, they did not separate the cost asin evaluating the cost of additional services, you would separate the fixed costs and the variable costs. Certain costs are fixed regardless of the number of calls that are made.
"Q: For instance, what would be an example of fixed costs?
"A: The cost of fire stations, the cost of fire trucks, the normal staff that you would have to have on as personnel. Those are fixed costs. Regardless of whether they have one call or a hundred calls, they are going to have to have a certain number of those expenditures at all times. This cost that they have calculated takes in those fixed costs and calculates a cost per call. It does not provide that these extra calls would only cost those variable expenses."
When a municipality calculates the cost of providing services to the police jurisdiction, the "incremental" cost of extending these services should be used for the calculations. It is not logical to assess the cost of providing a service by using expenses that *1164 would exist even if the municipality did not service the police jurisdiction. As stated above, in Holt Civic Club, supra, the United States Supreme Court stated that "[e]stablished cities are experienced in the delivery of such services, and the incremental cost of extending the city's responsibility in these areas to surrounding environs may be substantially less than the expense of establishing wholly new service organizations in each community." Holt Civic Club, 439 U.S. at 74, 99 S.Ct. at 392 (emphasis added). Based on the evidence presented at the hearings, it appears that Prattville's accounting method calculates the cost of providing fire protection in the police jurisdiction as if that service was being provided by a wholly new service organization. This is not the case. Such an accounting method yields an exaggerated cost allocation to the police jurisdiction services. The accurate treatment of the cost should first consider Prattville's fixed capital expenditures and all costs associated with providing fire protection within the corporate limits. Then, Prattville should determine the costs associated with extending that fire protection to the police jurisdiction.
Second, the record indicates that in its calculations Prattville included calls for emergency ambulance service in the total number of calls for fire service. The inclusion of ambulance calls distorts the calculations that Prattville relied upon in deciding to terminate fire protection service in the police jurisdiction. Fire Chief Plyler testified that there were more ambulance calls than fire calls each year. In short, this method caused the number of total fire calls from the police jurisdiction, as reflected in Prattville's calculations, to be considerably increased, and it caused the assessment of the total cost for servicing the police jurisdiction to be thereby inflated.
Third, Fire Chief Plyler testified that the fire department responded to fire calls within the corporate limits in a manner different from that in which it responds to fire calls in the police jurisdiction. He also explained that because of the difference it was more expensive to respond to a fire call within the corporate limits than to one in the police jurisdiction. However, the accounting method used by Prattville allocates the cost of a fire call by treating all calls as similar, in or out of the corporate limits. Therefore, the assessment of the total cost of servicing the police jurisdiction is further distorted by Prattville's calculations.
Fourth, the mayor of Prattville testified that Union Camp Corporation's plant, which is located within the police jurisdiction, contributes $70,000 to $75,000 each year to the city in lieu of paying taxes. However, Prattville has not included this money as part of the revenues collected from its police jurisdiction. The mayor's testimony provides no acceptable justification for this omission. If Union Camp contributes a flat fee to Prattville each year in lieu of taxes, then that fee is analogous to the taxes and fees paid by businesses and residents in the police jurisdiction. Therefore, the $70,000 to $75,000 contribution from Union Camp should have been included in the revenues collected from the police jurisdiction by Prattville.
When all these are taken into account in determining the cost of providing fire protection to Prattville's police jurisdiction, it becomes clear that Prattville's rationale for terminating that service is without merit.
The injunction requiring Prattville to continue providing fire protection to the area within its police jurisdiction is affirmed.
AFFIRMED.
SHORES, HOUSTON, KENNEDY, and BUTTS, JJ., concur.
MADDOX and COOK, JJ., dissent.
MADDOX, Justice (dissenting).
This decision, applying the doctrine of equitable estoppel against the City of Prattville, although purportedly limited to "the facts of this case," requires the City of Prattville to furnish fire protection to residents of the police jurisdiction, even though the City, using what appears to be sound accounting procedures for determining the average cost of a fire call, has determined that furnishing that protection will cause it to run an annual deficit of over $70,000.
The effect of this decision, although purportedly grounded on principles of equitable *1165 estoppel, and although purportedly limited to the "facts of this case," not only will affect Prattville, but could also adversely affect many other municipalities of this State that are furnishing municipal services to their police jurisdictions. Specifically troubling is the holding that a municipality cannot take the total budget for the fire department, divide the number of fire calls into the budget to get the cost per call, and determine the "incremental" cost of fire protection in the police jurisdiction based on those figures.
Although the Court does not specifically hold that a municipality that collects taxes and license fees from residents of the police jurisdiction is under a "duty" to provide those services, the Court uses the word "duty" in the opinion many times, and the effect of the holding appears to be that if a municipality elects to impose the taxes and license fees it is statutorily authorized to collect, which are only one-half those paid by city residents, then it must provide the municipal services, and that if it attempts to discontinue any of them because it has determined that the taxes and fees collected do not provide reasonable compensation for the expense of providing the services to its police jurisdiction, that determination can be subjected to judicial review. I think the decision incorrectly applies Alabama law; I must respectfully disagree with it and express the reasons for my disagreement.
The actual holding of the Court is as follows:
"We agree with the trial court that Joyner's reliance on continuing city fire protection was reasonable under the facts of this case. After 22 years of providing fire protection and collecting revenues for that protection, Prattville may not arbitrarily terminate this service.... Prattville must continue to provide fire protection to the police jurisdiction, because Prattville chose to collect revenue from the businesses and residents of the police jurisdiction in order to finance those services, and because Prattville created and maintained an ongoing relationship with the police jurisdiction in regard to those services. More importantly, the businesses and residents of the police jurisdiction reasonably relied on the continuation of that relationship."
661 So.2d at 1163. (Emphasis original.) In reaching its decision, the Court holds that residents of the police jurisdiction do not have to share in the "fixed" costs of the fire department, which the Court defines as "the expenses [that] would exist as a result of providing fire protection within the corporate limits regardless of whether [the city] provided the fire protection to the police jurisdiction." 661 So.2d at 1163.
It is apparent from a reading of this holding that the Court is of the opinion that the "incremental" costs of providing municipal services cannot include such things as the cost of fire stations and fire equipment. If that is the holding, then it is especially inequitable in view of the fact that Prattville can collect from those in the police jurisdiction only one-half the taxes and license fees it imposes on residents and businesses within the corporate limits.
The relationship between a municipality and the residents of the police jurisdiction has been the subject of several court decisions during the past few years. I think it would be preferable for the courts to leave the resolution of these disputes between residents of cities and those who live in the police jurisdiction over who should have to pay, to the Legislature. Because courts cannot levy taxes and raise license fees, they seem particularly ill equipped to resolve the conflicts between residents of a city and those that live outside the city, especially when those conflicts are over the providing of municipal services, the amount of taxes that can be levied, and the right to elect the regulators and decision makers. Consequently, I must disagree with the judgment of this Court. I think this action should be dismissed, with the recommendation that the plaintiff take his complaint to the Legislature, which could make the hard public policy choices between the competing interests.
The Court, in holding that Prattville must continue furnishing fire protection service in the police jurisdiction, does not specifically hold that a municipality is under a duty to furnish all municipal services to the police jurisdiction, but that appears to be the effect *1166 of its holding, because most municipalities in the State probably choose to furnish municipal services to their police jurisdictions and probably have imposed the statutorily authorized license fees and taxes, which, as I have already pointed out, are only one-half what they are in the corporate limits. The decision, no doubt, will be interpreted to require every municipality that has collected license fees and taxes from businesses and residents of the police jurisdiction to continue to furnish all municipal services, even though the municipality determines, as Prattville had, that to continue furnishing the services, based on the revenues received, would cause the municipality to suffer a deficit, which it could not erase by imposing higher license fees or taxes on residents and businesses in the police jurisdiction.
In reaching its conclusion, the Court applies a principle of law stated in Holi Civic Club v. City of Tuscaloosa, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978) (the so-called "no taxation without representation" case). In that case, the Court held that a municipality can impose taxes and license fees on residents and businesses in the police jurisdiction, without giving those residents a right to vote, if the amount collected is reasonably related to the costs of the services furnished. The Court here, using that case, applies its own calculus of "incremental costs," and, using its own accounting formula, determines that the City of Prattville's accounting procedures are "flawed" because they divide the total fire budget by the total fire calls made; this would appear to be a fair way of apportioning the cost of fire protection and would appear to treat all subscribers equally, whether they live in the corporate limits or in the police jurisdiction.
The formula for determining whether a particular tax or license fee is authorized is set out in State Department of Revenue v. Reynolds Metals Co., 541 So.2d 524 (Ala. 1989), as follows:
"A municipality must estimate the amount reasonably necessary to provide for the protection of the lives, health, and property of businesses and residents, and for the maintenance of good order and the preservation of public morals within its entire police jurisdiction. The municipality may then, by a properly adopted ordinance or resolution, set a license fee for businesses within its police jurisdiction, but outside its city limits, so that the total receipts from all such licenses do not exceed the amounts estimated to be reasonably necessary to provide these services to the police jurisdiction. No license fee charged to any business within the police jurisdiction, but outside the city limits, shall be more than one-half of the license fee charged to a similar business within the city limits. Such ordinances shall be presumed to be reasonable, and the burden shall be upon the business challenging the license fee charged to it to prove that such license fee is unreasonable or that the ordinance was illegally adopted or is violative of the statutory or fundamental law of the United States or of the State of Alabama."
541 So.2d at 532. The formula set out in Reynolds Metals appears to closely parallel the formula used by the Supreme Court of the United States in Holt Civic Club v. City of Tuscaloosa, in determining whether a tax or license fee could be constitutionally imposed on citizens without giving them the right to vote.
The ultimate question presented, of course, is: What happens when the revenue from license fees and taxes that a municipality is authorized by the Legislature to collect is insufficient to compensate the municipality for the municipal regulation and services the municipality is furnishing in the police jurisdiction? That is the question Prattville asks, and it is the critical question presented in this case. I believe that the Court addresses it incorrectly, especially when it uses its own calculus to determine that the principles of equitable estoppel should apply.
I recognize, of course, that the doctrine of equitable estoppel can be applied against a governmental entity, like the City of Prattville, but it should be applied against such entities "only with extreme caution or under exceptional circumstances." In State Hwy. Dep't v. Headrick Outdoor Advertising, Inc., 594 So.2d 1202 (Ala.1992), this Court said:

*1167 "Equitable estoppel is to be applied against a governmental entity only with extreme caution or under exceptional circumstances. First Nat'l Bank of Montgomery v. United States, 176 F.Supp. 768 (M.D.Ala.1959), aff'd, 285 F.2d 123 (5th Cir.1961); Ex parte Fields, 432 So.2d 1290 (Ala.1983).
"`Under the settled law, equitable estoppel... must be predicated upon the conduct, language, or the silence of the party against whom it is sought to be invoked. Said conduct, language, or silence must amount to the representation or concealment of a material fact or facts. The representation must be as to the facts and not as to the law.'

". . . .
"(Emphasis added [in Headrick Outdoor].) 176 F.Supp. at 772, quoting Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 182, 77 S.Ct. 707, 709, 1 L.Ed.2d 746 ... (1957).
"In Ex parte Fields, supra, at 1293, this Court held that neither the state [nor] its political subdivisions can be `estopped by doing that which they have no authority to do.' Consequently, as this Court has held, the doctrine of estoppel may not authorize a city to do that which the city had no authority to do, Alford v. City of Gadsden, 349 So.2d 1132 (Ala.1977); and a city may not adopt a zoning ordinance that contravenes a state law. Walls v. City of Guntersville, 253 Ala. 480, 45 So.2d 468 (1950). See, Corey Outdoor Advertising, Inc. v. Board of Zoning Adjustments, 254 Ga. 221, 327 S.E.2d 178, 182 (1985) (`equitable estoppel will not apply so as to frustrate or contravene a governmental function of a governmental unit'). See also, State v. Maddox Tractor & Equipment Co., 260 Ala. 136, 69 So.2d 426 (1953); Burr Drug Co. v. Long, 237 Ala. 689, 188 So. 873 (1939); and State ex rel. Lott v. Brewer, 64 Ala. 287 (1879) (cases in which this Court has held that the state acts in its governmental capacity in assessing and collecting taxes and licenses and cannot be estopped in those matters, even if it had failed in the past to assess and collect those taxes)."
594 So.2d at 1204-05. In Headrick Outdoor, this Court discussed at some length the application of the doctrine of equitable estoppel against a governmental agency, and it concluded that the Alabama Highway Department could not be estopped from preventing the defendant's continuing violation of the State Highway Beautification Act, in allegedly maintaining billboard signs in a prohibited area, notwithstanding the fact that a State agent had issued a permit to erect the signs. While I realize that whether a municipality must furnish fire protection to the residents of the police jurisdiction is a more complicated issue than was involved in Headrick Outdoor, the law of equitable estoppel remains constant, and this Court, in Headrick Outdoor, set out that law. Under Alabama law, the doctrine of estoppel is rarely applied against a municipal corporation and a municipality cannot be estopped from questioning the legality of a contract into which it had no authority to enter. City of Leeds v. Town of Moody, 294 Ala. 496, 319 So.2d 242 (1975). Nor may the doctrine of estoppel authorize a city to do that which it has no authority to do. Id.; Board of School Commissioners of Mobile County v. Hudgens, 274 Ala. 647, 151 So.2d 247 (1963).
Although the doctrine of estoppel may be applied in a proper case (see, Alford v. City of Gadsden, 349 So.2d 1132, 1135 (Ala.1977) (a case cited by the majority and relied on substantially by the majority in reaching its result)), I can find no case in which the doctrine has been applied unless there was some statutory or other legal authority for the municipality to act. In fact, the Alford case itself does not hold otherwise. In Alford, the City of Gadsden brought a declaratory judgment action to void a concession lease on the ground that it had no authority to enter into the lease. It is clear from a full reading of the Alford case that this Court held that the City of Gadsden had authority to enter into the lease there under consideration, and that it would be estopped to deny that it did. This Court specifically said: "[W]e think it clear that the city had the general authority to execute a lease for this concession stand in the public park." 349 So.2d at 1134.
The majority also cites City of Montgomery v. Weldon, 280 Ala. 463, 195 So.2d 110 *1168 (1967), to support its holding. In that case, the issue was whether the City of Montgomery should be estopped to plead a statute of limitations defense, in light of its prior dealings with the plaintiff. The issue was stated in the opinion as follows:
"The sole issue may be stated as follows: whether a municipality may actively mislead a citizen who was injured on its streets by its negligence, by representing to him that his claim is sufficiently filed and perfected, and by urging him not to hire an attorney or to take any further action for a year; and, after having led him into error, successfully set up his failure to strictly comply with the statutory requirements of a verified claim within six months, reciting the dollar amount of the claim."
280 Ala. at 466, 195 So.2d at 112. In applying the estoppel doctrine to the facts of that case, the Court said:
"This court, in Ellison v. Butler, 271 Ala. 399, 124 So.2d 88, quoted 19 Am.Jur., Estoppel, § 34, wherein equitable estoppel is defined as the principle of law `by which a party who knows or should know the truth is absolutely precluded, both in law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed.'"
280 Ala. at 466-67, 195 So.2d at 112. Applying this definition of "equitable estoppel" to the facts of Weldon, one is forced to the inescapable conclusion that Weldon presented an instance where the doctrine must be invoked.
"There are also two other reasons for applying the doctrine of estoppel: (1) the purpose of the statute has been fulfilled, and (2) the principle of estoppel has been applied in the past against a municipality. With respect to (1) above, the cases of City of Bessemer v. Barnett, 212 Ala. 202, 102 So. 23; Smith v. City of Birmingham, 243 Ala. 124, 9 So.2d 299; City of Birmingham v. Young, 246 Ala. 650, 22 So.2d 169; and City of Anniston v. Rosser, 275 Ala. 659, 158 So.2d 99, are authority that the purpose of § 504 is to apprise the city of the accident so it may investigate and determine the merit of the claim, and to adjust the same without the expense of litigation if the circumstances warrant. Here, the defendant was notified of the accident the very day it occurred and repaired the sidewalk within two days. It maintained close contact with, and received cooperation from Mr. Weldon from the time of his accident until suit was filed. Clearly, the purpose of the statute was fulfilled. As for (2) above, this court has applied the doctrine of estoppel in the cases of Powell v. City of Birmingham, 258 Ala. 159, 61 So.2d 11, and Brown v. Tuskegee Light & Power Co., 232 Ala. 361, 168 So. 159, which were suits against municipal corporations. Although estoppel is not often applied to a municipality, it may, in a proper case, be estopped."
280 Ala. at 467, 195 So.2d at 112. I do not disagree with either the rule of law or the ultimate holding in either Alford or City of Montgomery v. Weldon, because, in each case, the city had the authority to do what it did, but I do not believe the facts of this case, involving the furnishing of municipal services, are analogous to the facts in those two cases.
The City of Prattville has furnished fire protection to the police jurisdiction for 22 years. But does that mean it cannot stop furnishing that service if the cost of providing the service is not paid for by the license fees and taxes it is authorized to collect from the residents and businesses in the police jurisdiction? Must the residents of the municipality make up the difference? Those questions should be addressed by the Alabama Legislature, which can more appropriately handle a current problem that no doubt exists in many cities and their police jurisdictions, especially with the increase in crime and as the demands for city services increase. *1169 The answers to those policy questions seem especially inappropriate for a court, exercising its equity powers, to address.
In conclusion, let me say that I can find nothing in the statutory law of this State[3] or in the case law of this State that would require the residents of a municipality to pay for furnishing services to the police jurisdiction, unless the municipality has received compensation that fairly reflects the value of those services. I do not believe that the Legislature, in authorizing a municipality to collect in the police jurisdiction only one-half the license fees and sales tax that it can collect from its residents, intended for the residents of the municipality to be required to pay for municipal services in the police jurisdiction, if the amount of license fees and sales tax collected did not reasonably approximate the cost of furnishing those services.
Based on the foregoing, I cannot concur in affirming the judgment of the trial court, which used its equity powers and the doctrine of equitable estoppel to arrive at this result.
COOK, J., concurs.
NOTES
[1] For purposes of economy and convenience, the term "police jurisdiction" is used in this opinion to mean that area between the corporate limits and the limit of the municipality's police jurisdiction, unless otherwise specified.
[2] Although the ordinance terminates only fire protection, the parties have argued the issue whether a municipality has a duty to provide police and fire protection to businesses and residents located within its police jurisdiction. Therefore, we address that broader issue in this opinion.
[3] Section 11-51-91, Ala.Code 1975, permits municipalities to "fix and collect licenses for any business, trade or profession done within the police jurisdiction"; however, the amount of the license may not exceed one-half the amount charged for a license for similar businesses within the corporate limits. Municipalities may also collect sales tax in the police jurisdiction. Ala. Code 1975, §§ 11-51-200 through XX-XX-XXX. Again, any sales tax levied in the police jurisdiction is limited to one-half the amount levied in the corporate limits.